Ellis, Joe Coy 















IN THE
TENTH COURT OF APPEALS
 

NO. 10-89-001-CR

        JOE COY ELLIS,
                                                                                       Appellant
        v.

        THE STATE OF TEXAS,
                                                                                       Appellee
 

 From the 13th District Court
Navarro County, Texas
Trial Court # 23,000
                                                                                                                
                                                                     
O P I N I O N
                                                                                                     

          A jury found Joe Coy Ellis guilty of intentionally and knowingly causing the death of
Barney Lee Stephens by shooting him with a deadly weapon and sentenced him to sixty years in
prison. See Tex. Penal Code Ann. § 19.02 (Vernon 1989). Ellis perfected this appeal.           On original submission, we said:
The record reveals that on June 20, 1987, Ellis caught Barney Stephens
burglarizing the house in which he was living at the time. A struggle ensued, during
which Ellis suffered knife wounds to his spine, kidney, liver, and left lung, and a shotgun
wound to the rear of his right knee. But for the intervention of the couple who owned the
house, Ellis would likely have been killed by Stephens. As it was, Ellis was confined to
the hospital until October, where he underwent at least ten surgeries.
Stephens, who had less serious wounds from his encounter with Ellis, emerged
from the hospital soon thereafter and, according to Ellis, began threatening Ellis and his
family by phone calls and with drive-bys. Apparently Stephens was sent to prison at some
point after the incident for breaking parole.
Stephens emerged from prison on or about May 14, 1988. Two days later Ellis
loaded his shotgun and drove his car to a place near Stephens's farmhouse, but out of his
sight. Ellis then walked toward the house hoping to surprise Stephens, but Stephens
spotted Ellis while he was still about seventy yards away.
Ellis relates that when Stephens saw him approaching, Stephens grabbed at his own
chest and charged, yelling, "I'm not through with you yet, M.F." Ellis claims that in self-defense, he fired his shotgun at Stephens three times, once from about fifty yards, another
from about sixteen yards, and a third time from close range while, according to Stephens's
mother, Stephens begged him not to shoot. 
          Ellis complained in point three that the trial court erred in failing to submit the following
charge on threats made by the deceased to Ellis: 
You are further instructed that where a defendant accused of murder seeks to justify
himself on the grounds of threats against his own life, he is permitted to introduce evidence
of the threats made, but the same shall not be regarded as affording justification for the
offense unless it be shown at the time of the homicide the person killed by some act then
done manifested an intention to execute the threats so made, if any.
However, we found that the "threats" to which Ellis referred were not substantiated by the
testimony adduced at trial and overruled point three.
          After we affirmed the judgment, the Court of Criminal Appeals granted Ellis's petition for
discretionary review. The Court determined that there was sufficient evidence of threats to justify
the submission of the charge requested by Ellis. See Ellis v. State, No. 631-90, slip op. at 4 (Tex.
Crim. App. May 1, 1991). In addition to the facts we stated, the Court relied on the following:
Ellis testified that he received threatening telephone calls day and night from Stephens and that
Stephens threatened to kill Ellis's three-year-old boy and his father and mother; he also testified
that Stephens threatened to kill him and his family the day before he shot Stephens; when Stephens
stabbed Ellis in the spine, kidney, liver, and lung, and shot Appellant behind the right knee, he
said "I'm going to kill everybody in this damn house." See id. at 2-3.
          The 1974 amendments to the Penal Code did not codify all of the existing case law on self-defense. Young v. State, 530 S.W.2d 120, 123 (Tex. Crim. App. 1975). The charge which Ellis
requested was approved in Barkley v. State, 152 Tex. Crim. 376, 214 S.W.2d 287, 291-92 (1948)
(on rehearing). Thus, because there was sufficient evidence of threats in the record and because
a charge on self-defense should not be restricted to only the acts of the victim—verbal threats
should be included as well—we hold that the court erred in denying the instruction that Ellis
requested. See Young, 530 S.W.2d at 123; Barkley, 214 S.W.2d at 291-92.
          We next turn to the question of whether the error in failing to give the requested instruction
was calculated to injure Ellis's rights. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984). Because the failure to so charge the jury prevented Ellis from effectively arguing the
effect of the verbal threats, we find that such failure was calculated to injure his rights and that the
error requires reversal. See id.
          We reverse the judgment and remand the cause for a new trial.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed January 8, 1992
Do not publish